claim and interest that John Dock has in and to 70 acres of land lying on the west fork of Stone's river;" and in the latter the levy was on "two tracts of land of the defendant John Colter lying in Sevier county, in the 6th district; one of said tracts containing 122 acres, and the other 140 acres," etc.

In the course of their opinion in the latter case the court say: "There can be no uncertainty in the matter, unless it should happen that the same person has other tracts in the same civil district containing the same quantity of acres, which is very improbable."

The description which I am asked to pronounce void, is much fuller than that which the court here adjudged good, and the language here used by the court may be employed in the present case, mutatis mutandis.

There can be no uncertainty in the matter, unless it should happen that Pfannenstiehl owns two northwest quarter sections in the strip between the old and new state lines of Tennessee, each containing one hundred and fifty-nine acres; which is very improbable.

It rarely happens that a description in a deed or levy of land can be so certain as to dispense with all parol proof to fix its identity, and nothing is better established than that such proof may be resorted to when the description is not on its face so vague as to render it void. There is nothing vague on the face of the description here. I do not know that there is more than one northwest quarter section No. 17, in the strip referred to in the levy—especially do I not know that there is more than one northwest quarter section which belongs to Pfannenstiel, and still more especially do I not know that there is more than one northwest quarter section No. 17 in that strip which belonged to Pfannenstiel and containing only one hundred and fifty-nine acres.

The levy not being void on its face, the case was properly submitted to the jury, and I think they were more than authorized to find as they did. The motion for a new trial is therefore overruled.

In conclusion I must be permitted to say: First, that in my opinion, Wolf was not only a proper, but a necessary party to the suit of Looney and wife against Pfannenstiehl, and that as he was not a party thereto he is not concluded by the decree rendered therein. Second, that if Looney and wife have any equity which is good, and which was subsisting when Wolf obtained his judgment—they can assert it in a court of equity, and in a court of equity only.

WOLF (RUTHERGLEN v.). See Case No. 12,175.

## Case No. 17,927.

WOLF v. The SELT.

[See Case No. 12,649.]

## Case No. 17,928.

WOLF et al. v. SMYTHE.

[7 Biss. 365;[1] 9 Chi. Leg. News, 175.]

Circuit Court, N. D. Illinois. Feb. 5, 1877.

BILL OF LADING—BONA FIDE HOLDER—DEDUCTIONS FOR AGENT'S COMMISSIONS.

Although the bona fide holder of a bill of lading is entitled to the proceeds, the consignee has the right to deduct his commissions, and also the charges and insurance advanced by him.

[This was a suit by Aaron Wolf and others against John G. Smythe.]

H. G. Lunt, for plaintiffs.
Leffingwell & Johnson, for defendant.

BLODGETT, District Judge. This case was tried several weeks since by a jury, and a judgment rendered for $685.88. The suit was brought to recover the proceeds of four car loads of wheat, shipped by a man named Belden, to the defendant, Smythe, which the plaintiffs claim was duly assigned to them by Belden, and that they are entitled to the proceeds. It appears that Belden was a wheat buyer in Iowa, and the plaintiffs are bankers. The plaintiffs, in due course of business, advanced money to Belden with which he bought the wheat and shipped it to the defendant, who is a commission man in this city, for sale. Smythe received the wheat in question and sold it.

The evidence shows that Belden, on the shipment of the wheat, passed the bills of lading over to the plaintiffs, who had advanced him the money, and they made the drafts, and the drafts and the bills of lading came forward together, were duly presented to Smythe for payment, and he instead of paying the money on the drafts, passed it over to Belden's private or general account. This question has been up several times before the court, and the rulings have been uniform, that the party holding the bill of lading on a draft of that kind is entitled to the proceeds. So there is no necessity of re-discussing the law in that case. The trial, however, was an ex parte trial, and the court allowed plaintiffs to recover the full amount of the drafts at the time of the trial. The defendant was not represented. Pleas were in, but the pleas were the general issue.

The defendant shortly afterwards entered a motion for a new trial, and the matter came up on affidavits, and in the course of the discussion and disclosure of facts, it appears that no credit was given to the defendant, Smythe, for the charges which he paid upon this wheat. The wheat was shipped forward to the defendant, in this city, to be sold by him, and he advanced the charges and insurance, and was entitled to his commission. No credit was given him for the charges and commissions, but the plaintiffs

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]